## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RIKEN PATEL,**                                    **Case No.:**

**Plaintiff,**                                           **Judge:**

**v.**                                                  **DEMAND FOR JURY TRIAL**

**GENERAL MOTORS COMPANY,**
**MICHAEL SKEHAN, AND**
**KEVIN MCCABE,**

**Defendants.**
_____

**McTavish Law PLC**
**Attorneys for Plaintiff, Riken Patel**
**Christopher A. Chekan (P54969)**
**41000 Woodward Ave., Suite 350 East**
**Bloomfield Hills, MI  48304**
**T: (248) 289-7096**
**Email: chris@mctavishlaw.com**


## COMPLAINT

### I.      INTRODUCTION

1.      This case is about racism, revenge, and the whitewash of both at the General

Motors Company, ("GM").

2.      Riken Patel is South Asian Indian with brown colored skin.

3.     While Patel was an employee at GM, his white Manager, Michael Skehan, and his white Director, Kevin McCabe, intentionally and unlawfully discriminated against him based on the color of his skin, his race, and his national origin.

4.     Patel was highly ambitious and motivated to advance his career at GM. He developed a broad network and actively sought advice from mentors. Two of Patel's mentors at GM, Sanjiv Gupta, Executive Director, Corporate Finance Planning & Analysis, and Loek Beckers, Vice-President and CFO of General Motors International, ("GMI"), with whom Patel worked closely with during the year 2019 regarding a highly confidential and sensitive project with billion-dollar implications, told Patel that for him to progress his career and get ahead at GM he needed to continue working on visible, higher priority and higher profile projects.

5.     The group that Patel worked with at GM, Corporate Development Global Mergers & Acquisitions – Strategic Transactions & New Business Development, which McCabe oversaw, (the "McCabe Group"), historically made or supported promotions based on the prior projects an employee had worked on.

6.     McCabe and Skehan decided which projects Patel worked on.

7.  When Patel asked Skehan and McCabe on or about March 2020 to work on visible, higher priority and higher profile projects after he had proved himself during the year 2019 by working well with others and successfully on other projects, and having earned over 70,000 points in GM's internal recognition system designed to reward outstanding performance for that work, they fiercely refused Patel's request providing no rationale or justification and simply told him to focus on the work that they assigned, which he did with the utmost care and diligence.

8.  Skehan and McCabe regularly provided career advancing opportunities and assigned visible, higher priority and higher profile projects to white employees who had less experience or tenure to Patel.

9.  Within three months of Patel's above request to Skehan and McCabe, they wrote a scathing Mid-Year 2020 Performance Review of Patel, which, for the first-time, and without any prior warnings or communication to Patel, accused him of, inter alia, incompetence and an irredeemable bad attitude.

10. That Performance Review defacto fired Patel.

11. When Patel complained to Skehan, McCabe, and Christian Redlin of GM's Human Resources Department – Global Finance that Skehan and McCabe's Mid-Year 2020 Performance Review of him is blatantly false and racist, GM, Skehan, and McCabe retaliated against Patel.

12.     GM, Skehan, and McCabe told Patel that he could either quit or agree to probation to try to keep his job.

13.     If Patel agreed to the latter, then he would have to accept that Skehan and McCabe's false and racist accusations in their Mid-Year 2020 Performance Review of him are true and not racist.

14.     Patel would have to consent to continue to work under the supervision of those two racists individuals, even though their intentional and unlawful discrimination towards him had caused him serious physical and mental harm.

15.     Patel would also have to accept that the racists, Skehan and McCabe, would determine whether he completed probation successfully, even though they had already predetermined that he could not.

16.     The purpose of GM, Skehan, and McCabe's sham probation was to get Patel to abandon his claims of unlawful discrimination against them and then to fire him at the end of that probation.

17.     Patel resigned involuntarily from GM.

18.     Nevertheless, Patel, in a good faith attempt to assist GM to rid its workplace of unlawful discrimination, agreed to assist GM in its investigation of racism at GM if it supplied Patel with the alleged facts in support of Skehan and McCabe's false and racist accusations against him, and if GM amended its

release to say that Patel's co-operation in that investigation is without prejudice to Patel's rights and remedies regarding those false and racist accusations.

19.   GM refused Patel's good faith request.

20.   GM has also refused to provide Patel with the facts that allegedly supported Skehan and McCabe's accusations against him, despite Patel's numerous and repeated requests to GM for those facts.

21.   While GM was conducting the investigation, it rewarded Skehan with a double promotion to a Director position.

22.   Subsequently, GM exonerated Skehan and McCabe, GM continued to refuse to provide Patel with the alleged facts of its investigation, even though it had agreed earlier to do so, and GM condoned Skehan and McCabe's hiring of a white man, Kurt Hoffman, to replace Patel.

## II.   THE PARTIES

23.   Patel incorporates by reference and restates herein paragraphs 1 to 22 above.

24.   Patel is an individual. He presently resides in Oakland County, Michigan.

25.   GM is a corporation. It presently has approximately more than 155,000 employees. It is incorporated under the laws of the State of Delaware. GM's headquarters is located at 300 Renaissance Center, Detroit, Michigan 48243.

26. Skehan is an individual. He is presently Director, Corporate Development and Global Mergers and Acquisitions at GM. He works at its headquarters in Detroit, Michigan.

27. McCabe is an individual. He is presently Director, Strategic Partners at GM. He also works at its headquarters in Detroit, Michigan.

## III.   JURISDICTION AND VENUE

28. Patel incorporates by reference and restates herein paragraphs 1 to 27 above.

### A.   Jurisdiction

29. This Court has jurisdiction of this civil action under 28 USC Section 1331, as amended, because this action involves a federal question, specifically, GM's malicious and with reckless indifference violation of Patel's rights and remedies under federal laws, namely, the "Equal Employment Opportunity Act of 1972", 42 USC Section 2000e, et. seq., as amended, and the "Civil Rights Act of 1991", 42 USC Section 1981, et. seq., as amended.

30. This Court also has jurisdiction under 28 USC Section 1343(4), as amended, because this action seeks to recover damages or secure equitable or other relief under an Act of Congress that provides for the protection of civil rights, namely, the Civil Rights Act of 1991.

31. This Court has supplemental jurisdiction under 28 USC Section 1367, as amended, over Patel's claims under Michigan state law against GM, Skehan,

and McCabe because those claims are directly related to, and involve the exact same facts, as his claims against GM under the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991.

**B.    Venue**

32.    This Court has venue of this action under 28 USC Sections 1390(a) and 1391(a)(1), (a)(2)(b)(1), or (a)(2), (c)(1) and (2), and (d), as amended, because GM, Skehan, and McCabe all reside within the United States District Court for the Eastern District of Michigan, and a substantial part of the acts or omissions, or both, that give rise to Patel's claims against GM, Skehan, and McCabe occurred within that Court.

**IV.    THE FACTS**

33.    Patel incorporates by reference and restates herein paragraphs 1 to 32 above.

34.    Patel began his employment with GM on 21 May 2018.

35.    His job title at GM was "7 -Corporate Strategy, Development, and Planning Group – Corporate Development, Mergers, and Acquisitions", ("Senior Analyst").

36.    Jason Hensler was Patel's Manager from 21 May 2018 to on or about November 2019.

37.    McCabe was a Senior Manager when Patel began work with GM.

38.    Shortly thereafter McCabe was promoted to his present Director title.

39.     McCabe was Hensler's boss and Patel's boss.

40.     Patel was a member of McCabe's group.

41.     When Patel began working for McCabe's group there were ten persons in
        that group.

42.     Nine of those ten person were white.

43.     Patel was the only racial minority and South Asian Indian in that group.

44.     On or about March 2019, Hensler wrote his review of Patel's performance
        during the year 2018, and at the same time Hensler held an in-person
        meeting with Patel regarding that performance.

**A.     GM's Written Performance Review of Patel for the Year 2018**

45.     In that Performance Review, Hensler said that Patel "Achieves
        Expectations" regarding GM's goals and results and GM's behaviors.

46.     GM defines Achieves Expectations as "demonstrates and models the
        leadership behaviors of [GM]."

47.     Under the part of Patel's written Performance Review regarding "Manager's
        Comments", Hensler said, inter alia, that Patel "…played a key role
        supporting the Cruise team in Project Pluto…".

48.     Hensler also said that Patel "…supported the evaluation of strategic
        investments for GM, and that "[o]n Project Taipan, Patel prepared marketing

materials, managed the data room, and supported preparation of financial summaries."

49.   Hensler also said that Patel is "… action oriented", he "has a positive outlook", and he "…makes an effort to maintain strong working relationships across teams and functions."

50.   Hensler also said that because of Patel's previous experience, GM looks for him to "…quickly climb the learning curve and operate as a Sr. Analyst with minimal guidance."

51.   Hensler also said that Patel "…needs to continue to develop his attention to detail, error proofing, and approach to communicating with leadership", specifically, he needs to present "with factually supported positions rather than statements which come across as less substantiated …".

52.   Hensler noted that since he had mentioned the above to Patel, he had made progress in improving those skills.

53.   On or about November 2019, Skehan replaced Hensler as Patel's Manager.

54.   On or about March 2020, Skehan wrote his review of Patel's performance during the year 2019, and at the same time Skehan held an in-person meeting with Patel regarding that performance.

**B.**     **GM's Written Performance Review of Patel for the Year 2019**

55.    That Performance Review essentially mirrored Hensler's written Performance Review of Patel for the year 2018.

56.    In the "Manager's Comments" section of Skehan's Performance Review of Patel, Skehan said, inter alia, that Patel "…supported various growth opportunities, including, the potential license of key GM technology, which may result in direct increase to shareholder value in a relatively new field, with little or no immediate capital requirement. In many respects, Rick is perfectly competent driving results with limited oversight."

57.    Skehan noted, as Hensler did, that Patel, following his year 2018 Performance Review with Hensler, "…adjusted his approach following constructive feedback regarding such areas as leadership, messaging tone etc."

58.    Skehan said also that GM expected Patel "…. to drive workstreams at the level expected of a Senior Analysts on the Corp/Dev team, and to approach all assignments that he is given, big or small, with the same care and diligence."

59.    GM expected Patel to "…handle projects with relative independence in a timely and effective manner."

60.  For his work during the year 2019, Patel had been awarded over 70,000 points in GM's internal recognition system designed to reward outstanding performance.

61.  During Skehan's in person-meeting with Patel on or about March 2020 to discuss Patel's performance during the year 2019, neither Skehan, nor McCabe raised any issues with Patel regarding his performance between January and March 2020.

62.  Patel's mentors at GM, Gupta and Beckers, two high-level senior executives who reported directly to GM's CFO, told Patel that for him to progress his career and get ahead at GM he needed to continue working on visible, higher priority and higher profile projects.

63.  Promotions in McCabe's group or support for a promotion into a different group were closely related to the projects an employee had previously worked on.

64.  Following his year 2019 Performance Review, Patel asked Skehan and McCabe to work on higher profile and priority projects.

65.  Skehan and McCabe fiercely resisted Patel's request providing no rationale or justification.

66.  They refused to even consider Patel to work on such projects.

67.  They told him to simply work on the projects that they had assigned to him, which Patel did with the utmost care and diligence.

68.  While Skehan and McCabe refused to give Patel opportunities to work on higher profile and priority projects, they gave such career advancing opportunities to the white employees in McCabe's group who had less experience or tenure to Patel.

69.  On or about 31 July 2020, Skehan wrote his review of Patel's performance between January and June 2020, and at the same time Skehan and McCabe held a conference call with Patel regarding that performance since GM had closed its offices beginning March 2020 due to the Covid-19 pandemic.

**C.    GM's Written Performance Review of Patel for Mid-Year 2020**

70.  In that Performance Review, under the category "Manager's Evaluation", Skehan said, inter alia, that some of Patel's work is "adequate, particularly on straight forward tasks", but generally, he "…is performing at a level meaningfully below his peers on the team, even those with significantly less professional experience (internal GM or otherwise)."

71.  Skehan also said that "…a general theme in Rick's work is that it often requires considerably more oversight, direction and follow-up than would be expected of somebody with his background and at his level in the organization."

72.  Skehan also said that the situation with Patel "… is a bit of a Catch-22 in the sense that the broader team is not comfortable in assigning other, more urgent/difficult/visible projects given performance in prior initiatives. In many respects, we also feel strongly that this is indicative of behavior/attitude issues rather than technical capability-something that is more challenging to teach or correct for."

73.  As an example, Skehan said that Patel's work on the GM "Deal Playbook" had been delinquent.

74.  Skehan also said that Patel's day-to-day work "…typically lacked both (a) the depth of analysis required to facilitate decision-making and (b) the concision appropriate for leadership review."

75.  Skehan also said that Patel's work is "surface level" and "path of least resistance." He misses or ignores specific feedback, for example, he fails to address questions from leadership, he does not follow-up on specific action items, among other things. Patel's work is "…almost always below par from a timing and quality perspective."

76.  Between January and June 2020, neither Skehan, nor McCabe raised with Patel any of the above issues regarding his performance during that time period.

77.   McCabe never raised those issues with Patel during their regularly scheduled one-on-one meetings between January and June 2020.

78.   Neither Skehan, nor McCabe raised those issues with Patel before, during, or after the bi-weekly staff meetings of McCabe's group between January and June 2020.

79.   Neither Skehan, nor McCabe acknowledged Patel's success in March 2020 regarding the execution of the contract between GM and Isuzu.

**D.    GM's, Skehan's, and McCabe's Retaliation Against Patel**

80.   On 3 August 2020, Patel was granted access to his written Mid-Year 2020 Performance Review for the first-time.

81.   On 7 August 2020, a conference call was held among Patel, Skehan, and Redlin of GM's Human Resources Department-Global Finance regarding Patel's Mid-Year 2020 Performance Review.

82.   During that conference call, Redlin told Patel that he had two choices: he could either agree to participate in a probationary Performance Improvement Plan, ("PIP"), or he could quit.

83.   Redlin effectively withdrew the probationary PIP option after he spoke with Skehan and McCabe because Redlin said they did not believe Patel could successfully complete a PIP.

84.   On 11 August 2020, Patel, Skehan, and Redlin had a second conference call, which was similar to their first conference call on 7 August 2020.

85.   On 24 August 2020, Patel, Skehan, and Redlin had a third conference call. During that conference call, Skehan said that Patel would be evaluated against a probationary PIP while he decides whether to quit, even though Patel had not agreed to that and Skehan had admitted that no such PIP document had been drafted or existed.

86.   Later, on the same date, Redlin emailed a Separation Package from GM to Patel. In order to accept that Package, Patel had to agree to, and sign, a release that had been drafted by GM's lawyers and favors GM.

87.   On 26 August 2020, GM emailed its sham probationary PIP to Patel.

88.   On 31 August 2020, Patel sent an email to Skehan, McCabe, and Redlin. In that email, Patel said, inter alia, that his Mid-Year 2020 Performance Review is fabricated, false, and it attempts to assassinate his character so Skehan and McCabe can fire Patel, which is their end goal.

89.   Patel also said that since that Performance Review is not based on the facts, it must be based on the color of his skin, which is shocking, but not surprising, based on the past discrimination he has faced from both Skehan and McCabe.

90. Patel also said that Skehan and McCabe's accusation in their Mid-Year 2020 Performance Review that Patel's work on GM's Deal Playbook was delinquent is false.

91. Patel noted that his work on the annual update to the Deal Playbook began on 1 October 2019 and ended on 11 December 2019.

92. Neither Skehan, nor McCabe had made any complaints to Patel regarding his work on that Deal Playbook during that time frame.

93. They did not make any complaints to Patel regarding his work on that Deal Playbook in his written 2019 Performance Review or during their in-person meeting with Patel regarding that Performance Review on or about March 2020.

94. They did not make any complaints to Patel regarding his work on that Deal Playbook prior to 31 July 2020.

95. Skehan and McCabe's accusation that Patel was tardy in responding to requests made to him is also false.

96. For example, an ad-hoc request was made on 11 May 2020 when McCabe, Skehan, and Hensler asked Patel to modify a template for the Deal Playbook, Patel responded timely and completed the request on the same day in a matter of hours.

97.   Patel was unable to respond to Skehan and McCabe's other fabrications and falsehoods in their Mid-Year 2020 Performance Review of him because they were vague, ambiguous, and had not provided any facts supporting them.

98.   After Patel raised Skehan and McCabe's racism towards him with GM's Human Resources Department, GM gave Patel two options. He could quit or agree to a probationary PIP to try to save his job.

99.   If Patel agreed to the latter, then he would have to accept that Skehan and McCabe's false and racist accusations in their Mid-Year 2020 Performance Review of him are true and not racist.

100.   Patel would also have to consent to work under the racists, Skehan and McCabe, even though their intentional and unlawful discrimination towards him had caused him severe physical and mental harm.

101.   Patel would also have to accept that Skehan and McCabe would decide whether he had completed a probationary PIP successfully, even though, they had already predetermined that he could not.

102.   Patel rejected GM's option of a probationary PIP and he told GM that he is leaving.

103.   Patel told GM that he is not going to get into any further discussions with it regarding his employment with GM.

104. On 3 September 2020, McCabe cancelled his regularly scheduled one-on one meeting with Patel.

105. On the same date, GM's Human Resources Manager for Global Finance, Adam Foust sent an email to Patel. In that email, Foust said, inter alia, that he is going to investigate Patel's claim of intentional and unlawful discrimination, and that GM would pause its probationary PIP process for Patel and extend the time for him to accept GM's Separation Package until it concludes that investigation.

106. On 4 September 2020, McCabe removed Patel from the bi-weekly staff meetings of McCabe's group.

107. On 8 September 2020, Patel sent an email to Foust. In that email, Patel said, inter alia, that he is not going get into a discussion regarding the unlawful discrimination he faced from Skehan and McCabe.

108. Patel also said that he cannot delay his separation from GM because Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of him had seriously damaged his physical and mental health for which he had already been treated for by a physician and that remaining at GM while Foust conducted his investigation would only worsen Patel's health.

109. Patel asked, again, for the alleged facts supporting that Performance Review.

110. And again, GM refused to provide him with those facts.

111.  On 10 September 2020, Foust sent an email to Patel that said, inter alia, that GM would share the results of its investigation with Patel.

112.  On 16 September 2020, Patel sent an email to Foust, which he copied to Kim Brycz, Senior Vice-President of Human Resources for GM. In that email, Patel said, inter alia, that GM's requirement that he remain under the supervision of Skehan and McCabe whose unlawful discrimination towards him had caused him severe physical and mental distress is unreasonable and is contrary to GM's core value of safety as expressed by its Chief Executive Office, Mary Barra, in her Yammer posting, dated 14 September 2020.

113.  Patel also said that he had still not received any alleged facts from GM in support of Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of Patel.

114.  Patel expressed serious reservations to Foust whether his investigation of Skehan and McCabe's intentional and unlawful discrimination towards him will be impartial or whether instead it will be a cover-up.

115.  While GM was conducting the investigation, it rewarded Skehan with a double promotion to a Director position.

116.  Patel said that he will involuntarily resign from GM on 1 October 2020 due to the discrimination and constructive discharge tactics that he has been subjected to at GM.

117. Prior to and after Patel's involuntary resignation from GM, neither it, nor Foust, nor Redlin, nor Skehan, nor McCabe asked Patel about his physical and mental well-being.

118. On 7 October 2020, Foust sent an email to Patel. In that email, Foust said, inter alia, that he had completed his investigation of Patel's allegations of unlawful discrimination and Foust found them to be baseless.

119. Foust also said that his investigation found multiple documented issues regarding Patel's poor performance during the first half of the year 2020, but he provided no alleged facts for his findings to Patel.

120. Foust gave Patel until 12 October 2020 to accept GM's Separation Package.

121. On 9 October 2020, Patel sent an email to Foust. In that email, Patel requested a copy of the report of Foust's investigation, including the alleged facts that support his conclusions in that report.

122. On 16 October 2020, Foust sent an email to Patel. In that email, Foust said, inter alia, that he will not provide Patel with the information from his investigation because it is the general policy of GM not to provide such information to employees.

123. On 20 October 2020, Patel sent an email to Foust. In that email, Patel said, inter alia, that he cannot agree to and sign GM's proposed Separation Package without having received the alleged facts regarding Skehan and

McCabe's mendacious accusations in their Mid-Year 2020 Performance Review of him.

124.   Skehan and McCabe replaced Patel with a white man, Kurt Hoffman, which ultimately left no South Asian Indians in McCabe's group.

### E.    Equal Employment Opportunity Commission

125.   On 6 May 2021, Patel filed a Charge of Discrimination against GM with the Equal Employment Opportunity Commission, ("EEOC").

126.   That Charge of Discrimination said, inter alia, that Patel had been discriminated against on the bases of his race, the color of his skin, and his national origin at GM.

127.   His Charge of Discrimination also stated that when he complained of that unlawful discrimination to GM, it retaliated against him.

128.   On 29 September 2021, GM, through its outside counsel, Ms. Becky L. Ramseyer Melchiorre of the law firm, Littler Mendelson P.C., filed a Response to Patel's Charge of Discrimination.

129.   GM's Response requested, inter alia, that Patel's Charge of Discrimination be dismissed by the EEOC because he cannot establish a prima facie case of unlawful discrimination or retaliation, or both.

130. On 12 November 2021, Patel filed a Reply to GM's Response that said, inter alia, that Patel has demonstrated a prima facie case of both unlawful discrimination and retaliation.

131. On 12 January 2022, the EEOC issued a Notice of Right to Sue Letter to Patel at his request.

**F.    Patel's GM Personnel Record**

132. On 7 February 2022, Patel sent a letter by email to Foust and Melchiorre.

133. That letter requested, inter alia, a copy of Patel's personnel record from GM under the State of Michigan "Bullard-Plawecki employee right to know act, MCL 423.501 et. seq., as amended.

134. That letter also requested that Patel's personnel record be scanned and emailed to his counsel, McTavish Law PLC, because Patel cannot attend GM's headquarters to review that record in-person and scanning and emailing that record would be cheaper and faster than sending it by U.S. Mail.

135. As of the date of this Complaint and Jury Demand, GM has not scanned and emailed Patel's personnel record to his counsel.

## V.     CLAIMS

### A.     GM's Intentional Unlawful Discrimination Against Patel Contrary to the Civil Rights Act of 1991, 42 USC Section 1981, et. seq., as amended

136.   Patel incorporates by reference and restates herein paragraphs 1 to 135 above.

137.   Patel is a member of a protected class. He is South Asian Indian with brown colored skin.

138.   Patel is qualified for the job of Senior Analyst in GM's Corporate Development Global Mergers and Acquisitions Department. He achieved expectations regarding GM's goals and behaviors, inter alia, while he was employed with GM.

139.   Patel suffered an adverse employment action at GM. His white Manager, Skehan, and his white Director, McCabe, defacto fired him on 31 July 2020 based on his Mid-Year 2020 Performance Review, which firing they confirmed on 7 August 2020 when they said he could not successfully complete GM's probationary PIP.

140.   Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of Patel is a pretext in order to cover-up their racism towards him, which is the real basis for that Performance Review and is the real reason they fired him.

141. After Skehan and McCabe obtained that goal, they replaced Patel with the kind of employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**B.    GM's Intentional Unlawful Discrimination Against Patel Contrary to the Equal Employment Opportunity Act of 1972, 42 USC 2000e et. seq., as amended**

142. Patel incorporates by reference and restates herein paragraphs 1 to 141 above.

143. Patel is a member of a protected class. He is South Asian Indian with brown colored skin.

144. Patel is qualified for the job of Senior Analyst in GM's Corporate Development Global Mergers and Acquisitions Department. He achieved expectations regarding GM's goals and behaviors, inter alia, while he was employed with GM.

145. Patel suffered an adverse employment action at GM. His white Manager, Skehan, and his white Director, McCabe, defacto fired him on 31 July 2020 based on his Mid-Year 2020 Performance Review, which firing they confirmed on 7 August 2020 when they said he could not successfully complete GM's probationary PIP.

146.　Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of Patel is a pretext in order to cover-up their racism towards him, which is the real basis for that Performance Review and the real reason they fired him.

147.　After Skehan and McCabe obtained that goal, they replaced Patel with the kind of employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**C.　GM'S Intentional Unlawful Discrimination Against Patel Contrary to the Elliott-Larsen Civil Rights Act, MCL 37.2101 et. seq., as amended**

148.　Patel incorporates by reference and restates herein paragraphs 1 to 147 above.

149.　Patel is a member of a protected class. He is South Asian Indian with brown colored skin.

150.　Patel is qualified for the job of Senior Analyst in GM's Corporate Development Global Mergers and Acquisitions Department. He achieved expectations regarding GM's goals and behaviors, inter alia, while he was employed with GM.

151.　Patel suffered an adverse employment action at GM. His white Manager, Skehan, and his white Director, McCabe, defacto fired him on 31 July 2020 based on his Mid-Year 2020 Performance Review, which firing they confirmed on 7 August 2020 when they said he could not successfully complete GM's probationary PIP.

152. Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of Patel is a pretext in order to cover-up their racism towards him, which is the real basis for that Performance Review and the real reason they fired him.

153. After Skehan and McCabe obtained that goal, they replaced Patel with the kind of employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**D.    GM'S Retaliation Against Patel Contrary to the Civil Rights Act, 1991, 42 USC Section 1981, et. seq., as amended**

154. Patel incorporates by reference and restates herein paragraphs 1 to 153 above.

155. Patel engaged in a protected activity. On 31 August 2020, in an email, he told Redlin of GM's Human Resources Department – Global Finance that he, Patel, had been intentionally and unlawfully discriminated against based on the color of his skin by his white Manager, Skehan, and his white Director, McCabe, in their Mid-Year 2020 Performance Review of him.

156. GM knew of Patel's above complaint of intentional unlawful discrimination. He had communicated it to Skehan, McCabe, and Redlin by email.

157. GM responded adversely to Patel's above complaint of intentional and unlawful discrimination.

158. GM told Patel that he could quit or agree to a probationary PIP to try to keep his job.

159.  If Patel agreed to the latter, he would have to accept that Skehan and
      McCabe's false and racist accusations in their Mid-Year 2020 Performance
      Review of him are true and not racist.

160.  Patel would have to consent to continue to work under the supervision of
      those two racists, even though their intentional unlawful discrimination
      towards him had caused him serious physical and mental harm.

161.  Patel would also have to accept that Skehan and McCabe would determine
      whether he successfully completed their sham probationary PIP, even
      though they already had predetermined on 7 August 2020 that he could not.

162.  Patel resigned involuntarily from GM.

163.  On 31 August 2020, Patel made his above complaint of intentional unlawful
      discrimination to GM.

164.  After Patel made that complaint, and up to and including 1 October 2020,
      when he involuntarily resigned from GM, it maintained, and it never resiled
      from, its above adverse response to him.

165.  Skehan and McCabe's Mid-Year 2020 Performance Review of Patel is a
      pretext. They used it to mask their racism towards Patel, which is the real
      basis for that Performance Review and the reason they fired him.

166. After Skehan and McCabe accomplished that goal, they replaced Patel with the kind of employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**E.     GM's Retaliation Against Patel Contrary to the Equal Employment Opportunity Act of 1972, 42 USC Section 2000e et. seq., as amended**

167. Patel incorporates by reference and restates herein paragraphs 1 to 166 above.

168. Patel engaged in protective activity. On 31 August 2020, in an email, he told Redlin of GM's Human Resources Department – Global Finance that he, Patel, had been intentionally and unlawfully discriminated against based on the color of his skin by his white Manager, Skehan, and his white Director, McCabe, in their Mid-Year 2020 Performance Review of him.

169. GM knew of Patel's above complaint of intentional unlawful discrimination. He had communicated it to Skehan, McCabe, and Redlin by email.

170. GM responded adversely to Patel's above complaint of intentional unlawful discrimination.

171. GM told Patel that he could quit or agree to a probationary PIP to try to keep his job.

172. If Patel agreed to the latter, he would have to accept that Skehan and McCabe's false and racist accusations in their Mid-Year 2020 Performance Review of him are true and not racist.

173.  Patel would have to consent to continue to work under the supervision of
those two racists, even though their intentional unlawful discrimination had
caused him serious physical and mental harm.

174.  Patel would also have to accept that Skehan and McCabe would determine
whether he successfully completed their probationary PIP, even though they
had already predetermined on 7 August 2020 that he could not.

175.  On 31 August 2020, Patel made his above complaint of unlawful
discrimination to GM in an email.

176.  After Patel made that complaint, and up to and including 1 October 2020
when he involuntarily resigned from GM, it maintained, and it never resiled
from, its above adverse response to him.

177.  Skehan and McCabe's Mid-Year 2020 Performance Review of Patel is a
pretext. They used it to mask their racism towards Patel, which is the real
basis for that Performance Review and the real reason they fired him.

178.  After Skehan and McCabe accomplished that goal, they replaced Patel with
the kind of employee they wanted, Kurt Hoffman, a white man, and
rewarded Skehan with a double promotion to a Director position.

**F.     GM's Retaliation Against Patel Contrary to the Elliott-Larsen Civil Rights Act, MCL 37.2101 et. seq., as amended**

179.  Patel incorporates by reference and restates herein paragraphs 1 to 178 above.

180.  Patel engaged in protective activity. On 31 August 2020, in an email, he told Redlin of GM's Human Resources Department-Global Finance that he, Patel, had been intentionally and unlawfully discriminated against based on the color of his skin by his white Manager, Skehan, and his white Director, McCabe, in their Mid-Year 2020 Performance Review of him.

181.  GM knew of Patel's above complaint of intentional unlawful discrimination. He had communicated it to Skehan, McCabe, and Redlin by email.

182.  GM responded adversely to Patel's above complaint of intentional unlawful discrimination.

183.  GM told Patel that he could quit or agree to a probationary PIP to try to keep his job.

184.  If Patel agreed to the latter, he would have to accept that Skehan and McCabe's false and racist accusations in their Mid-Year 2020 Performance Review of him are true and not racist.

185.  Patel would have to consent to continue to work under the supervision of those two racists, even though their intentional unlawful discrimination towards him had caused him serious physical and mental harm.

186. Patel would also have to accept that Skehan and McCabe would determine whether he successfully completed their probationary PIP, even though they had already predetermined on 7 August 2020 that he could not.

187. Patel resigned involuntarily from GM.

188. On 31 August 2020, Patel made his above complaint of intentional unlawful discrimination to GM in an email.

189. After Patel made that complaint, and up to and including 1 October 2020 when he resigned involuntarily from GM, it maintained, and it never resiled from, its above adverse response to him.

190. Skehan and McCabe's Mid-Year 2020 Performance Review of Patel is a pretext. They used it to mask their racism towards Patel, which is the real basis for that Performance Review and the real reason they fired him.

191. After Skehan and McCabe accomplished that goal, they replaced Patel with the kind of employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**G.  Skehan and McCabe's Retaliation Against Patel Contrary to the Elliott-Larsen Civil Rights Act, MCL 37.2101 et. seq., as amended**

192. Patel incorporates by reference and restates herein paragraphs 1 to 191 above.

193. Patel engaged in protective activity. On 31 August 2020, in an email, he told Redlin of GM's Human Resources Department- Global Finance that he,

Patel, had been intentionally and unlawfully discriminated against based on the color of his skin by his white Manager, Skehan, in his Mid-Year 2020 Performance Review of Patel.

194. Skehan and McCabe knew of Patel's above complaint of intentional unlawful discrimination. He had communicated it to both of them by email.

195. Skehan and McCabe responded adversely to Patel's above complaint of unlawful discrimination.

196. They told Patel that he could quit or agree to probation to try to keep his job.

197. If he agreed to the latter, he would have to accept Skehan and McCabe's false and racist accusations in their Mid-Year 2020 Performance Review of him are true and not racist.

198. Patel would have to consent to continue to work under the supervision of those two racists, even though their intentional unlawful discrimination towards him had caused him serious physical and mental harm.

199. Patel would also have to accept that Skehan and McCabe would determine whether he had successfully completed their probationary PIP, even though they had already predetermined that he could not.

200. On 31 August 2020, Patel made his above complaint of intentional and unlawful discrimination to Skehan and McCabe in an email.

201. After Patel made that complaint, and up to and including 1 October 2020 when he resigned involuntarily from GM, Skehan and McCabe maintained and they never resiled from, their above adverse response to Patel.

202. Skehan and McCabe's Mid-Year 2020 Performance Review of Patel is a pretext. They used it to mask their racism towards Patel, which is the real basis for that Performance Review and the real reason they fired him.

203. After Skehan and McCabe accomplished that goal, they replaced Patel with the kind employee they wanted, Kurt Hoffman, a white man, and rewarded Skehan with a double promotion to a Director position.

**H.    Skehan and McCabe's Intentional Infliction of Emotional Distress on Patel**

204. Patel incorporates by reference and restates herein paragraphs 1 to 203 above.

205. Skehan and McCabe engaged in extreme and outrageous conduct towards Patel.

206. Skehan and McCabe intentionally and unlawfully discriminated against Patel based on the color of his skin, his race, and his national origin, and when Patel complained about that to Skehan and McCabe, they retaliated against him.

207.    Skehan and McCabe's accusations that Patel is incompetent and has an
irredeemable bad attitude, inter alia, in their Mid-Year 2020 Performance
Review of him are lies and assassinates his character.

208.    Skehan and McCabe's mendacious Mid-Year 2020 Performance Review of
Patel is a pretext in order to mask their racism towards him, which is the real
basis for that Performance Review and the real reason they fired him and
retaliated against him.

209.    Skehan and McCabe replaced Patel with the kind of employee they wanted,
Kurt Hoffman, a white man, and rewarded Skehan with a double promotion
to a Director position.

210.    Skehan and McCabe's above lies and acts were done intentionally or
recklessly, or both.

211.    Skehan and McCabe's above acts have caused Patel severe physical and
mental distress for which he has been and is being treated by a physician.

**I.    Skehan and McCabe's False Light Invasion of Patel's Privacy**

212.    Patel incorporates by reference and restates herein paragraphs 1 to 211
above.

213.    Skehan and McCabe's accusations in their Mid-Year 2020 Performance
Review of Patel that he is incompetent and has an irredeemable bad attitude,
inter alia, are false and racist.

214.  Skehan and McCabe knew those accusations were false, or recklessly disregarded whether they were false, or both, when Skehan and McCabe disseminated those accusations at GM.

215.  Skehan and McCabe published their above false and racist accusations of Patel with actual malice. They are spiteful lies and assassinates his character.

216.  Skehan and McCabe knew or should have known that their accusations were false before they published them.

217.  Skehan and McCabe's accusation in their Mid-Year 2020 Performance Review of Patel that his work on GM's Deal Playbook was delinquent, is false, and they knew or should have known that before they published it.

218.  Patel's work on the annual update to that Playbook began on 1 October 2019 and ended on 11 December 2019, and neither Skehan, nor McCabe had raised any concerns with Patel regarding that work while he did it, during his Year 2019 Performance Review that was held on or about March 2020, or prior to 31 July 2020.

219.  Patel was unable to respond to Skehan and McCabe's other false and racist accusations in their Mid-Year 2020 Performance Review of him because they had not provided any alleged facts for those accusations in that Review or during their in-person meeting regarding that Review on 31 July 2020.

220. Despite Patel's numerous and repeated requests to GM for those facts, both before and after he resigned involuntarily from GM, it has refused to provide them to him.

221. Skehan and McCabe's dissemination of their false and racist accusations against Patel has caused him serious physical and mental distress for which he has been and is being treated by a physician.

**J.   Skehan and McCabe's Injurious Falsehoods Against Patel**

222. Patel incorporates by reference and restates herein paragraphs 1 to 221 above.

223. Skehan and McCabe's accusations in their Mid-Year 2020 Performance Review of Patel that he is incompetent and he has an irredeemable bad attitude, inter alia, are false and racist.

224. Skehan and McCabe knew those accusations were false and racist, or recklessly disregarded whether they were false and racist, when Skehan and McCabe disseminated those accusations at GM.

225. Skehan and McCabe published their above false and racist accusations of Patel with actual malice. They are spiteful lies and assassinates his character.

226. Skehan and McCabe knew or should have known that their accusations were false before they published them.

227. Skehan and McCabe's accusations in their Mid-Year 2020 Performance Review of Patel that his work on GM's Deal Playbook was delinquent is false, and they knew or should have known that before they published their accusations.

228. Patel's work on the annual update to that Playbook began on 1 October 2019 and ended on 11 December 2019, and neither Skehan, nor McCabe had raised any concerns with Patel regarding that work while he did it, during his Year 2019 Performance Review, or prior to 31 July 2020.

229. Patel was unable to respond to Skehan and McCabe's other false and racist accusations in their Mid-Year 2020 Performance Review of him because they had not provided any alleged facts for those accusations in that Review or during their in-person meeting regarding that Review on 31 July 2020.

230. Despite Patel's numerous and repeated requests to GM, both before and after he resigned involuntarily from GM, for those facts, GM has refused to provide those alleged facts to him.

231. Skehan and McCabe's dissemination of their false and racist accusations against Patel has caused him serious physical and mental distress for which he has been and is being treated by a physician.

232.  Skehan and McCabe knew or should have known that their above intentional and malicious false and racist publications regarding Patel would likely result in an action being brought against them by Patel.

233.  Patel put Skehan and McCabe on notice of that by email before he resigned involuntarily from GM.

234.  Patel has suffered special damages, or pecuniary losses, because of the above lies and acts of Skehan and McCabe, including, but not limited to, Patel's attorney's fees and costs to bring, and maintain this action, exemplary damages, loss of back pay, future pay, and other economic damages.

**K.   GM's Violation of the Bullard-Plawecki Employee Right to Know Act, 423.501, et. seq., as amended**

235.  Patel incorporates by reference and restates herein paragraphs 1 to 234 above.

236.  Patel has requested from GM and its outside counsel, Melchiorre, that his personnel file from GM be scanned and emailed to his counsel, McTavish Law PLC, pursuant to the above Act.

237.  GM lawyer, Michael Little, has admitted that he has received Patel's above request for his personnel file from GM.

238.  GM has not scanned and emailed its personnel file for Patel to McTavish Law PLC before Patel filed this complaint and jury demand.

239.  Patel has been prejudiced by GM's failure to do so.

240.  GM's personnel file for Patel contains the alleged facts for Skehan and
      McCabe's Mid-Year 2020 Performance Review of Patel and the facts for
      Foust's investigation of Patel's claim that he was intentionally and
      unlawfully discriminated against by Skehan and McCabe.

241.  If Patel had those facts, he could address them in this Complaint, which
      would streamline this litigation and save the court and the parties
      unnecessary time and expense.

## VI.   RELIEF REQUESTED

242.  Patel incorporates by reference and restates herein paragraphs 1 to 241
      above.

243.  Patel seeks the following relief, inter alia, from GM, Skehan, and McCabe:

      A.  pre-judgment interest;

      B.  post-judgment interest;

      C.  attorney's fees and costs;

      D.  back pay;

      E.  front pay;

      F.  compensatory damages;

      G.  exemplary damages;

      H.  punitive damages;

I.  unvested 401k; and,

J.  such further and other relief that Patel may request, and this Honorable

Court may deem just.

Dated: 6 April 2022

/s/ Christopher A. Chekan

**McTavish Law PLC**
**Attorneys for Plaintiff, Riken Patel**
**Christopher A. Chekan (P54969)**
**41000 Woodward Ave. Suite 350 East**
**Bloomfield Hills, MI 48304**
**T: (248) 289-7096**
**Email: chris@mavtavishlaw.com**


## **JURY DEMAND**

Patel requests this action be tried before a jury pursuant to Article VII of the

Articles in Addition to, and Amendment of, the Constitution of the United States of

America, 42 USC Section 1981a(c)(1), as amended, and Fed. R. Civ. P. 38, as

amended.

Dated: 6 April 2022

/s/ Christopher A. Chekan

**McTavish Law PLC**
**Attorneys for Plaintiff, Riken Patel**
**Christopher A. Chekan (P54969)**
**41000 Woodward Ave. Suite 350 East**
**Bloomfield Hills, MI 48304**
**T: (248) 289-7096**
**Email: chris@mavtavishlaw.com**